**FOSTER GRAHAM MILSTEIN & CALISHER LLP**
Daniel K. Calisher (State Bar No. 181821)
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com

*Attorneys for Plaintiff Luminate Home Loans, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| LUMINATE HOME LOANS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ELLEN EFKEN; <br> EFK APPRAISAL SERVICES, INC.; <br> and ROBERT D. GIVEN <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR PROFESSIONAL NEGLIGENCE** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Luminate Home Loans, Inc. ("Luminate"), through counsel, for its Complaint against the captioned defendants hereby states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Luminate Home Loans, Inc. is a Minnesota corporation with a principal place of business located at 2523 South Wayzata Boulevard, Suite 200, Minneapolis, Minnesota 55405.

2.  Upon information and belief, defendant Ellen Efken ("Efken") is a California citizen and with a business address of 720 El Cerrito Drive, Suite 22, Riverside, California 92507.

3.  Upon information and belief, EFK Appraisal Services, Inc. ("EFK") is a California corporation with a principal place of business located at 720 El Cerrito Drive, Suite 22, Riverside, California 92507.

4. Upon information and belief, defendant Robert D. Given ("Given") is a California citizen and licensed real estate appraiser who resides at, and operates his solo appraisal practice from, 39332 Fernwood Glen Court, Palm Desert, California, 92211.

5. This Court has jurisdiction over the subject matter of this dispute pursuant to U.S.C. § 1332(a)(1) because of diversity of citizenship among the parties and because the amount in controversy exceeds $75,000.

6. This Court may exercise personal jurisdiction over Efken and EFK (collectively "EFK Parties") and Given because each are California citizens who reside and do business in California.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because EFK Parties and Given (collectively "Defendants") are California residents and specifically reside and/or transact business in the Eastern Division of the Central District of California.

## FACTUAL ALLEGATIONS

8. Luminate is a residential mortgage loan originator whose business involves funding loans to borrowers, i.e. individuals seeking funds in order to purchase real estate.

9. Upon financing, Luminate sells mortgages it funded to other investors, such as Fannie Mae, for a profit.

10. Before deciding to fund a loan, Luminate conducts due diligence on both the prospective borrower(s) and the real property the borrower seeks to purchase.

11. The due diligence is to ensure the loan meets both Luminate's requirements as well as the requirements of investors to whom Luminate may sell the loan.

12. As part of this due diligence process, Luminate retains professional real estate appraisers to prepare reports on the fair market value of the subject property.

13. Real estate appraisal is a specialized field that, at least in California, requires licensure.

14. Among other things, licensed appraisers determine a property's fair market value by comparing the subject property to other, comparable properties.

15. In the real estate appraisal profession, these comparisons ("comps") must be made using similarly-situated properties—as compared to the property being appraised—in order to reach a fair estimate of value.

16. In determining whether to fund a particular loan to a prospective borrower, Luminate materially relies on the fair market value assigned to the subject property by the retained, licensed appraiser(s).

17. In the fall of 2024, a prospective borrower named Louis Castillo ("Castillo") applied to Luminate for a mortgage on a property located at 1061 East Via San Dimas Road, Palm Springs, California 92262 ("San Dimas Property").

18. As part of its due diligence, Luminate engaged Efken, a California-licensed appraiser, along with EFK, to determine the San Dimas Property's fair market value and prepare a report accompanying and explaining this determination.

19. The EFK Parties provided a report to Luminate determining the fair market value of the San Dimas Property as of December 16, 2024 to be $2,000,000.00. A true and correct copy of the EFK Parties' report is attached hereto as **Exhibit 1**.

20. Notably, $2,000,000 was the purchase price for the San Dimas Property.

21. Luminate subsequently retained a second California-licensed appraiser, Given, to prepare a second valuation of the San Dimas Property.

22. Given provided Luminate with a report dated January 24, 2025, which valued the San Dimas Property at $2,075,000.00—higher than EFK Parties' appraised value. A true and correct copy of Given's report is attached hereto as **Exhibit 2**.

23. In late January 2025, Luminate approved Castillio for a $1.6 million mortgage and funded the loan accordingly ("Mortgage").

24. In funding the Mortgage, Luminate relied heavily on the property values provided by Defendants in connection with the San Dimas Property.

25. Castillo defaulted on his mortgage in early 2025.

COMPLAINT AND JURY DEMAND

26. Following Castillo's default, Luminate began the process of foreclosing on the San Dimas Property and, as part of this process, retained a California-licensed appraiser to prepare another assessment of the property's value.

27. This third appraiser was specifically tasked with determining both the then-current fair market value of the San Dimas Property and the fair market value as of December 2024/January 2025 when Defendants prepared their respective reports.

28. Through this process, Luminate discovered the fair market value of the San Dimas Property at the time EFK and Given prepared their reports was approximately $1.2 million—roughly 40% (or $800,000) less than the value Defendants had assigned the property.

29. Defendants' methodology for appraising the San Dimas Property falls below accepted practice within their profession, as well as below the applicable standard of care.

30. Had Defendants produced appraisals in accordance with professional standards, Luminate would have had accurate information regarding the true value of the San Dimas Property and, accordingly, would not have funded Castillo's mortgage.

31. Defendants' negligent appraisals have caused Luminate to incur actual damages in an amount to be determined at trial, but which as of the date of this filing is approaching $1 million.

## FIRST CLAIM FOR RELIEF

### (Professional Negligence – Defendant Given)

32. Luminate incorporates the above allegations as if fully set forth herein.

33. Given has a duty as a real estate appraisal professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise.

34. Given breached his professional duty of care by assigning a value to the San Dimas Property that was more than $800,000 over the property's true value.

35. Given's breach of his professional duty of care was the proximate cause of Luminate's injury, namely Luminate's funding of a $1.6 million loan for the San Dimas Property on the basis of Given's appraisal.

36. As a result of Given's negligence, Luminate has suffered actual damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Professional Negligence – EFK Parties)

37. Luminate incorporates the above allegations as if fully set forth herein.

38. The EFK Parties have a duty to use such skill, prudence, and diligence as other members of the real estate appraisers' profession commonly possess and exercise.

39. EFK—through its appraiser, Efken—breached its professional duty of care by assigning a value to the San Dimas Property that was more than $800,000 over the property's true value.

40. The EFK Parties' breach of their professional duty of care was the proximate cause of Luminate's injury, namely Luminate's funding of a $1.6 million loan for the San Dimas Property on the basis of the EFK Parties' appraisal.

41. As a result of the EFK parties' negligence, Luminate has suffered actual damages in an amount to be proven at trial.

## RELIEF REQUESTED

**WHEREFORE,** Luminate respectfully requests that the Court:

A. Award monetary damages in favor of Luminate and against Defendants in an amount to proven at trial;

B. Award Luminate pre- and post-judgment interest as allowed by law;

C. Award Luminate any recoverable attorneys fees and costs; and

D. Grant any other such relief to Luminate as the Court deems just and proper.

## JURY DEMAND

Luminate requests a jury on all issues so triable.

DATED this 26th day of February, 2026.

        **FOSTER GRAHAM MILSTEIN**
          **& CALISHER LLP**

        */s/ Daniel K. Calisher*
        Daniel K. Calisher

        *Attorneys for Plaintiff*